DAVID M. KEARNS AND JANET KEARNS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kearns v. Commissioner
Docket No. 21801-87
United States Tax Court
T.C. Memo 1991-320; 1991 Tax Ct. Memo LEXIS 352; 62 T.C.M. (CCH) 123; T.C.M. (RIA) 91320; July 10, 1991, Filed *352 Decision will be entered under Rule 155. R. William Eisnaugle, for the petitioners. Jeffrey L. Bassin, for the respondent. PARR, Judge
PARR
MEMORANDUM OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Section 6653(b) [1]
1979
$  7,667.00
$ 3,833.50
1980
14,078.00
7,039.00
1981
6,705.00
3,352.50
After concessions the issues remaining for decision are: 1. Whether respondent may use the bank deposits and cash expenditures method of income reconstruction and, if so, whether respondent must determine the amount of cash on hand at the beginning of the tax years in issue. 2. Whether petitioners underreported taxable income for the tax years in issue, [2] or whether they had a nontaxable *353 cash hoard of $ 95,000 from which to draw. 3. Whether petitioners are liable for additions to tax for fraud under section 6653(b) for the tax years in issue. 4. Whether assessments of deficiencies and additions to tax for the tax years in issue are barred by the statute of limitations. 5. Whether petitioner Janet Kearns qualifies for innocent spouse relief under section 6013(e). Petitioners resided in Jackson, Ohio, when they filed the petition in this case. For clarity, facts and opinion will be combined issue by issue. 1. The Bank Deposits and Cash Expenditures Method of Reconstructing Income
Section 6001 requires taxpayers to maintain records sufficient *354 to "show whether or not such person is liable for tax." If a taxpayer fails to maintain records, respondent may utilize other means of determining income. Sec. 446(b). Petitioners failed to maintain books or records sufficient to clearly reflect income; accordingly, respondent is authorized by section 446 to reconstruct income with a method which clearly reflects the full amount of income received. Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); Nicholas v. Commissioner, 70 T.C. 1057, 1064-1065 (1978). The premise underlying the bank deposits and cash expenditures method is that, absent some explanation, a taxpayer's bank deposits and cash expenditures represent taxable income. See Petzoldt v. Commissioner, 92 T.C. at 694; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioners argue that respondent's use of the bank deposits and cash expenditures method is invalid because he failed to establish the amount of cash on hand at the beginning of each taxable year. We do not agree. Bank deposits are prima facie evidence of income when the bank deposits method is used. Respondent relied *355 on specific bank deposits in determining petitioners' correct taxable income. Accordingly, the amount of cash on hand at the beginning of the tax years in issue is irrelevant for purposes of the bank deposits method in this civil case. See Tokarski v. Commissioner, supra; Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). Under the cash expenditures method, respondent need not establish the precise net worth figures (which include cash on hand) as long as the proof makes clear the extent of any contribution which beginning resources or a diminution of resources over time could have made towards expenditures. Petzoldt v. Commissioner, supra at 694-695; Taglianetti v. United States, 398 F.2d 558, 565 (1st Cir. 1968), affd. 394 U.S. 316, 22 L. Ed. 2d 302, 89 S. Ct. 1099 (1969). Petitioners claim they possessed a $ 95,000 cash hoard at the beginning of 1979, and provided a detailed description of the items making up their cash hoard. Respondent analyzed each item and determined petitioners were entitled to zero cash on hand for 1979. The evidence shows the extent to which petitioners' cash hoard contributed towards *356 their cash expenditures; accordingly, an accurate showing of cash on hand at the beginning of the tax years in issue is not necessary for respondent's use of the cash expenditures method in this case. 2. Computation of Petitioners' Correct Taxable Income
a. Cash Hoard
Petitioners argue respondent failed to reduce their income by their $ 95,000 cash hoard. Specifically, petitioners allege that during the 1970's they accumulated cash with the idea of building a house. They say that by the beginning of 1979, their cash hoard consisted of: $ 60,000 received from David Kearns' father, James Kearns ($ 35,000 in November 1976 and $ 25,000 in January 1977); $ 15,000 from annual Christmas gifts from James Kearns from 1975 to 1979 ($ 3,000 per year); $ 12,000 petitioner [3] saved from Percy Wilson Mortgage Company during his employment from 1972 to 1977; $ 6,500 collected in 1978 from the Ross Ogier judgment; proceeds from the sale of automobiles, machinery, and tools; and additional cash. Based on the evidence presented, we find petitioners possessed $ 6,500 cash on hand at the beginning of 1979, representing the Ogier judgment. *357 Petitioners contend James Kearns "loaned" them $ 35,000 in 1976 and $ 25,000 in 1977, from his own cash hoard. [4] We are not persuaded. First, we find James Kearns did not possess the financial means to make these loans to petitioners. James Kearns worked for the DT&I Railroad from 1959 or 1960 until 1982, and he moonlighted working on automobiles. Neither petitioners nor their witness, Mr. Plummer, convinced the Court that James Kearns earned enough money from his work to enable him to make the alleged loans. The following chart shows James Kearns' limited financial resources. Year
Dependents
Wages
AGI
Taxable
Tax
In Addition
Income
Liability
To Emma Kearns
1970
*
*   *   * $   927
1971
*
*   *   $  5,300
851
1972
*
*   *   7,200
1,222
1973
*
*   *   8,400
1,457
1974
*
*   $ 14,277
* * 1975
*
$ 14,700
13,825
* * 1976
*
*   16,995
11,275
* 1977
2
16,964
16,984
* * 1978
2
19,464
19,494
* * 1979
2
28,040
28,071
* * 1980
1
29,827
29,889
* * 1981
1
28,107
28,107
* * 1982
1
11,724
11,785
* * *358 On September 14, 1982, James Kearns applied to the City of Jackson Community Development Rehabilitation Program for assistance from a program designed to help low and moderate income families rehabilitate substandard residential real property. James and Emma Kearns received a grant of $ 6,506 and a loan of $ 6,506, secured by a $ 12,912 mortgage on their personal residence. James Kearns, diagnosed with cancer in 1979, died on December 10, 1982. At the time of his death, all of his cash, $ 370.73, was deposited in the Oak Hill Savings Bank. Second, Larry Olson, a document examiner, examined a writing signed only by James Kearns and dated November 1976, purporting to memorialize the $ 35,000 as a loan or an advance on David Kearns' inheritance. Olson opined that, based on the availability of the ink used in the document, it was not written before July 1977. Moreover, petitioner testified he had no knowledge of the writing until Emma Kearns discovered it after James Kearns died. Lastly, *359 William A. Slavens, a family friend and an attorney in Ohio, testified he was present in an unofficial capacity on January 20, 1977, when James Kearns handed a "package" or "pouch" to petitioner, and petitioner signed a note for $ 25,000 in favor of James Kearns. After considering the circumstances surrounding the two loans and James Kearns' limited financial resources, we find James Kearns did not loan petitioners $ 35,000 in November 1976 or $ 25,000 in January 1977. The next item in petitioners' cash hoard allegedly supplied by James Kearns is the undocumented annual $ 3,000 Christmas gifts from 1975 through 1979, totalling $ 15,000. We find James Kearns did not have the financial resources to make these gifts. Petitioner initially claimed $ 12,000 of the cash hoard represented the total cash savings from a $ 20 cash per diem he received from Percy Wilson between 1972 and 1977. Later he claimed that in January 1979, after spending the Percy Wilson money for incidentals, the residual equalled $ 12,000. Regardless of the fact that petitioner stopped working at Percy Wilson in 1977, he next asserted that the Percy Wilson savings hit a low of $ 7,800 in 1977 or 1978, *360 and later accumulated back up to $ 12,000 in January 1979. The Percy Wilson per diem explanation is inconsistent and implausible, and petitioner has not convinced the Court to what degree, if any, he utilized the per diem in his cash hoard. On March 6, 1977, the State of Ohio, County of Jackson Court of Common Pleas entered a $ 6,500 judgment in favor of petitioner against Ross Ogier. We find petitioners collected and retained the cash from the judgment. Lastly, we find petitioners did not place funds from the sale of automobiles, machines, and tools, or additional cash in their cash box. b. Reductions in Respondent's Determination of Bank Deposits and Cash Expenditures
We find petitioners' income is reduced by an additional $ 11,386 in 1979, $ 15,898.60 in 1980, and $ 2,243.23 in 1981. (See appendix.) 3. Fraud
Respondent bears the burden of proving by clear and convincing evidence that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To satisfy his burden of proof respondent must show (1) that an underpayment exists, and (2) that petitioner intended to evade taxes which he knew to be owing, by actions intended to conceal, mislead, *361 or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. 654, 661 (1990); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The burden of proving the existence of an underpayment is satisfied by disproving nontaxable sources alleged by a taxpayer. United States v. Massei, 355 U.S. 595, 2 L. Ed. 2d 517, 78 S. Ct. 495 (1958); Parks v. Commissioner, supra. Respondent may disprove the existence of petitioners' alleged cash hoard through a showing that his income reconstruction is accurate, combined with a showing that the sources of petitioners' alleged cash hoard are inconsistent, implausible, and not supported by objective evidence in the record. Parks v. Commissioner, supra at 661. We find respondent satisfied both criteria. Petitioners' assertion that James Kearns contributed $ 75,000 to their cash hoard is not supported by objective evidence in the record. Likewise, petitioners' description of James Kearns' divestment; the sources, characterization, and disposition of James Kearns' contributions; and the Percy Wilson per diem are inconsistent, contradictory, and implausible. *362 James Kearns' divestment of virtually all his cash while dying of cancer is implausible. Moreover, petitioners failed to prove how much money, if any, James Kearns loaned and gave them from 1979 through 1982. We believe it unlikely that such a divestment occurred.
Petitioners' explanation of the sources of James Kearns' funds from January 1, 1970, through December 31, 1981, is inconsistent. Petitioners stated in interrogatories that James and Emma Kearns inherited property during the late 1960's or early 1970's worth $ 50,000, and that information known or readily available was insufficient to enable them to further describe the sources of James Kearns' funds. Petitioners failed to mention James Kearns' automotive work. Yet, at trial petitioners testified and produced a witness, in efforts to convince the Court of the magnitude of James Kearns' automotive work income, and they did not mention the inheritance. Emma Kearns died on July 5, 1989. Petitioner's testimony concerning his knowledge of his mother's will and an agreement with his brothers regarding a $ 60,000 note is contradictory. On March 14, 1983, petitioner executed a $ 60,000 note in favor of Emma Kearns which apparently *363 purported to consolidate the two James Kearns notes. Petitioner recorded a mortgage on his home, currently under construction, to secure the note. However, petitioner never made any payments on the note, and the note was not included as an asset in Emma Kearns' Ohio Estate Tax Return filed on October 6, 1989. Petitioner claimed he did not know the provisions of his mother's will. Petitioner later testified that he was the executor and discussed some of the will's provisions. Petitioner also claimed he was unaware of the disposition of the $ 60,000 note and had not yet come to an understanding with his brothers concerning the payment of the note. Petitioner later testified he agreed with two of his brothers that he would repay the note over an indefinite period of time, and was still waiting to speak with the third brother. Next petitioner claimed his mother forgave the note in 1987 and he possessed a signed and notarized paper to that effect. However, petitioner did not produce the debt forgiveness document at trial. Petitioner later testified that because his mother died unexpectedly, he decided to honor the $ 60,000 note anyway if his brothers so desired. We find this *364 debt forgiveness scenario implausible. We have already discussed petitioner's testimony concerning the Percy Wilson per diem. Based on the above, we find respondent proved the existence of an underpayment of tax. Respondent must next prove by clear and convincing evidence that petitioner possessed the requisite fraudulent intent. The existence of fraud is a question of fact that must be resolved upon a consideration of the entire record. Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), but may be proved by circumstantial evidence, because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra at 1111; Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, 67 T.C. at 200. The taxpayer's entire course of conduct may establish the requisite fraudulent *365 intent. Petzoldt v. Commissioner, 92 T.C. 661, 669 (1989); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, 317 U.S. 492, 499, 87 L. Ed. 418, 63 S. Ct. 364 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. Holland v. United States, 348 U.S. 121, 137, 99 L. Ed. 150, 75 S. Ct. 127 (1954); Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. a Memorandum Opinion of this Court. [5] However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, supra. Fraud may not be found under circumstances which at the most create only suspicion. Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950). *366 Badges of fraud which may be taken into account include: (1) The making of false and inconsistent statements to revenue agents, Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); (2) understatements of income; (3) inadequate records; (4) implausible or inconsistent explanations of behavior; and (5) dealing in cash. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; [6]Meier v. Commissioner, 91 T.C. 273, 298 (1988). We find petitioners possessed the requisite fraudulent intent. First, petitioners consistently understated their income for all three years in issue. Second, petitioners maintained inadequate records regarding the sources of funds used in making their cash expenditures during the years in issue. Third, petitioners used cash extensively while building their house, which *367 facilitated their efforts to conceal the sources of their funds. Finally, we have already discussed petitioner's numerous inconsistent, contradictory, and implausible statements and explanations. These statements and explanations are additional factors to be considered in determining the existence of fraudulent intent. Based on the record as a whole and the Court's opportunity to observe the demeanor of petitioner and the other witnesses and to judge their credibility, the Court is satisfied that respondent has proved by clear and convincing evidence fraud on the part of petitioner husband for each year. Fraud is not imputed from one spouse to another. In the case of a joint return, respondent must prove fraud as to each spouse charged for the addition to tax. Sec. 6653(b); Stone v. Commissioner, supra at 227-228. Respondent has failed to prove overt acts of petitioner wife sufficient to justify imposing the section 6653(b) addition to tax against her, and accordingly, has not carried his burden of proving her fraudulent intent. 4. Statute of Limitations
Section 6501(c)(1) provides for the assessment of tax at any time in the case of a fraudulent *368 return. We have found fraud on the part of petitioner husband, and accordingly, the period for assessment remains open for both petitioners. Benjamin v. Commissioner, 66 T.C. 1084, 1101 (1976), affd. 592 F.2d 1259 (5th Cir. 1979); Vannaman v. Commissioner, 54 T.C. 1011, 1017-1018 (1970). 5. Innocent Spouse Relief
When a husband and wife file a joint return, each is jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). However, section 6013(e) relieves a spouse of joint liability if he or she proves that: (1) A joint return was made for the taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) he or she did not know, and had no reason to know, of the substantial understatement when he or she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1); Flynn v. Commissioner, 93 T.C. 355, 359 (1989). The spouse claiming *369 entitlement to innocent spouse relief has the burden of proving that each statutory requirement of section 6013(e) is satisfied; a failure to prove any one of the statutory elements will prevent such spouse from qualifying for relief. Bokum v. Commissioner, 94 T.C. 126, 138 (1990); Rule 142(a). We need not discuss the first three elements because we find the last element has not been satisfied: Janet Kearns significantly benefited from the understatements of income because petitioners used the unreported income to build their house. Sec. 1.6013-5(b), Income Tax Regs. Therefore, it is not inequitable to hold her liable for the deficiency. Decision will be entered under Rule 155. Appendix 1979 Reductions in Income
Additional basis in 1973 truck
$  2,744.00
Additional basis in 1973 pickup
3,150.00
Additional basis in 1965 Mustang
4,452.00
Elimination of truck purchased in 1978
1,040.00
$ 11,386.00
1980 Reductions in income
Chrysler inventory
$ 15,000.00
Reimbursed expenditures for Mr. Slavens
898.60
$ 15,898.60
1981 Reductions in Income
Electrical equipment paid for in 1982
$    831.75
Expenses incurred by
Kearns Brothers Automotive
1,411.48
$  2,243.23
*370 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the statutory notice of deficiency, respondent determined petitioners underreported their income by $ 24,864.79, $ 35,817.63, and $ 20,973.61 in 1979, 1980, and 1981, respectively. In his brief, respondent determined petitioners underreported their income by $ 21,117.61, $ 27,700.80, and $ 19,730.24 in 1979, 1980, and 1981, respectively.↩
3. All references to petitioner in the singular are to David M. Kearns.↩
4. We find that James Kearns did not accumulate an $ 87,350 cash hoard as petitioners suggest.↩
*. Information not available↩
5. Merritt v. Commissioner, T.C. Memo 1959-172, affd. 301 F.2d 484↩ (5th Cir. 1962).
6. Bradford v. Commissioner, T.C. Memo 1984-601, affd. 796 F.2d 303↩ (9th Cir. 1986).